UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| e2Value, Inc., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:14-cv-00473-WWE |
| | : | |
| Fireman's Fund Insurance Company, | : | |
|     Defendant. | : | |

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

This is an action by plaintiff e2Value Inc. against defendant Fireman's Fund Insurance Company for breach of contract (Count I), misappropriation of trade secrets (Count II), statutory computer related offenses (Count III), and unfair trade practices (Count IV).  Defendant has moved to dismiss Counts I, III, and IV for failure to state a claim.  For the following reasons, defendant's motion will be denied.

### BACKGROUND

The following background is taken from the allegations of plaintiff's amended complaint [Doc. # 25], which are accepted as true for purposes of this decision.

Plaintiff is a leading provider of web-based insurance-to-value software and an industry innovator.

Among plaintiff's product and service offerings are online residential and replacement cost valuators, which deliver instant insurance values.  Authorized users need only input a property address for the cost valuators to deliver a proprietary replacement cost report.  These generated reports are referred to as a "Cost Engine."

In 2001, defendant expressed interest in plaintiff's Cost Engine. The parties entered into discussions pursuant to a non-disclosure agreement.

In 2002, plaintiff and defendant entered into a first Cost Engine Access and Use Agreement ("First Agreement").  Pursuant to the First Agreement, defendant was granted access to the Cost Engine for an initial term, subject to specified terms and conditions, including acknowledgment that, upon termination, defendant would cease all use of plaintiff's Cost Engine and return all confidential information in its possession.

The parties subsequently entered into or renewed similar Cost Engine Access and Use Agreements in 2003, 2005, 2007, and 2008.  The last of the Agreements terminated effective July 31, 2009.

Under the Agreements, defendant accessed and used the Cost Engine.  Defendant paid plaintiff substantial fees for its access and use.

During the term of the last of the Agreements, defendant began to use the Cost Engine differently than it had in the past and, in particular, began to use the Cost Engine in a way that heavily mined plaintiff's proprietary cost data.

Defendant's internal cost matrices include substantial data related specifically to Connecticut properties, including data derived from plaintiff's Cost Engine.  Defendant has used its cost matrices in connection with products or services provided with respect to Connecticut properties.

Defendant used the Cost Engine in a way that it knew to be an unauthorized use of plaintiff's computer system and in violation of the Agreements by making unauthorized copies and using data residing in plaintiff's computer system.

DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendant argues that plaintiff is preempted from pursuing its claims of breach of contract, computer theft, and violation of Connecticut's Unfair Trade Practices Act ("CUTPA") because such claims are preempted by plaintiff's misappropriation of trade secrets claim. In the alternative, defendant contends that plaintiff's CUTPA claim, as alleged, lacks a sufficient nexus to the state of Connecticut.

**Preemption**

Defendant relies on the language of Connecticut General Statutes Section 35-57, which governs legal conflicts between Connecticut's Uniform Trade Secrets Act ("CUTSA") and other forms of civil liability:

> (a) Unless otherwise agreed by the parties, the provisions of this chapter supersede any conflicting tort, restitutionary, or other law of this state pertaining to civil liability for misappropriation of a trade secret.

> (b) This chapter does not affect: (1) Contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; (2) criminal liability for misappropriation of a trade secret; or (3) the duty of any person or state or municipal agency to disclose information pursuant to section 1-210, sections 31-40j to 31-40p, inclusive, or subsection (c) of section 12-62, or wherever expressly provided by law.

Conn. Gen. Stat. § 35-57.

Defendant essentially contends that Section 35-57 precludes related claims when a plaintiff brings a trade secret based claim. However, only conflicting laws are superseded by the Act. Indeed, this Court has held that CUTSA does not necessarily preempt breach of contract claims regardless of whether they are predicated on a theory that defendant violated contractual confidentiality provisions by misappropriating trade secrets. <u>Imaginative Research Associates, Inc. v. Ramirez</u>, 718 F. Supp. 2d 236, 250 (D. Conn. 2010). As in <u>Ramirez</u>, defendants have not demonstrated that the contractual provisions conflict with CUTSA's provisions. Similarly, defendant has not demonstrated conflict between plaintiff's computer related claim or unfair trade practices claim. Accordingly, plaintiff's claims will not be dismissed based on preemption.

**Nexus**

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "'Trade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).

Defendant argues that plaintiff fails to allege a single act of wrongdoing occurring in the state of Connecticut, but the amended complaint alleges that defendant's internal cost matrices

4

include substantial data related specifically to Connecticut properties, including data derived from plaintiff's Cost Engine.  Plaintiff alleges further that defendant regularly and actively solicits business and underwrites insurance in Connecticut and used plaintiff's proprietary property valuations and cost matrices in connection with products or services provided with respect to Connecticut properties.

Defendant cites Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc., 406 F. Supp. 2d, 175, 200 (D. Conn. 2005) for the proposition that commerce is deemed to have occurred in Connecticut *only* if it was intimately associated with the State.  More precisely, Reiling held that "CUTPA does not require that a violation actually occur in Connecticut if the violation is tied to a form of trade or commerce intimately associated with Connecticut . . ."  Id. Here, the amended complaint alleges misuse of data related to Connecticut properties in connection with the provision of services in Connecticut, whereas Reiling dealt with nationwide sales of action figures with no special relationship to the State.  Moreover, Reiling was a post-discovery summary judgment decision.  Here, plaintiff's allegations, taken as true, adequately describe the use of Connecticut-specific data and the provision of services by defendant within the State.  Therefore, plaintiff's CUTPA claim will not be dismissed for failure to allege conduct within Connecticut.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Doc. #26] is DENIED.

Dated this 22nd day of January, 2015, at Bridgeport, Connecticut.

    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE